**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| YAZZMINE GALLIMORE, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | CIVIL ACTION NO. 26-CV-1975 |
| | : | |
| SIZA EDUCATIONAL SERVICES, | : | |
| *et al.*, | : | |
|     Defendants. | : | |

**MEMORANDUM**

**SCOTT, J.**                                                       **JUNE 29 , 2026**

Yazzmine Gallimore has filed an employment discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII") against her former employer Siza Educational Services ("Siza") and two of its employees, Patricia Jeffers and Thuli Buthelezi.[1] She also seeks to proceed *in forma pauperis*. As the Court has instructed Gallimore in a prior decision that coworkers are not proper defendants in a Title VII case, the coworkers will be dismissed with prejudice.[2] The Court will grant Gallimore leave to proceed *in forma pauperis* and also dismiss

---

[1] The spelling of Buthelezi's name is not consistent. The Court will use the spelling Gallimore used in the form portion of her Complaint.

[2] *See Gallimore v. Merakey*, No. 25-6089, 2026 WL 510725, at *4 n.3 (E.D. Pa. Feb. 24, 2026) ("*Gallimore II*") (stating that the United States Court of Appeals for the Third Circuit has declined to extend liability under Title VII to individuals, holding the term "employer" as used in Title VII does not encompass individual employees (citing *Sheridan v. E.I. DuPont de Nemours & Co*., 100 F.3d 1061, 1078 (3d Cir. 1996)).
The Court provided Gallimore with extensive information about the law governing Title VII race-based termination, retaliation, and hostile work environment claims in *Gallimore II* 2026 WL 510725, at *3, and an earlier Memorandum dismissing the original complaint in that case, *Gallimore v. Merakey*, No. 25-6089, 2026 WL 309489, at *3 n.2, n.3. (E.D. Pa. Feb. 4, 2026) ("*Gallimore I*"). The decisions gave her instructions on what types of factual allegations she must make to assert these kinds of claims plausibly.

1

the claims against Siza.  Gallimore's request for appointment of counsel will be denied as premature.

## I.    FACTUAL ALLEGATIONS[3]

By checking boxes on her Complaint form, Gallimore, who is African American, asserts Title VII race-based discrimination claims based on termination of her employment, a failure to stop harassment, and retaliation based on acts that began on February 12, 2025.  (Compl. at 5-7). She asserts on the form portion of the Complaint that she was discriminated against at Siza "for [her] race . . . [and] when she attempted to talk to supervisors about the discrimination/harassment, they removed [her] from [her] position as a behavioral health tech." (*Id*. at 7.)  Gallimore states that when she reported it to the EEOC, "they retaliated against [her] and limited [her] work hours."  (*Id*.)

In the typewritten portion, Gallimore adds that she began working at Siza on January 2, 2025 at a middle school in Exton and then was switched to a daycare called Care Center Foundation in West Chester.  (*Id*. at 10.)  In a February 12 email, her supervisor Patricia Jeffers[4] reported concerns from the daycare about Gallimore being late to work, "not utilizing the board for behavioral reinforcement, and not engaging with the child."  (*Id*.)  Gallimore assured Jeffers she was on time, except for snow days and the days the child she cared for had doctor appointments, and also told her she "would be more prompt" with using the token board for behavior reinforcement and engaging with the client.  (*Id*.)  On February 14, the teacher in the

---

[3] Unless otherwise stated, the facts are taken from Gallimore's Complaint (ECF No. 2) consisting of the Court's form available to unrepresented litigants and attached typewritten pages.  The Court deems to the entire submission to constitute the Complaint adopts the pagination supplied to all *pro se* submissions by the CM/ECF docketing system.

[4] Gallimore refers to Jeffers as being her "BCBA" but does not explain the acronym.

classroom where Gallimore was assigned "used intimidation when [Gallimore] attempted to communicate with her about an incident that happened with the children." (*Id*.)  On February 21, she received another email from Jeffers with concerns about "her engagement with the child, utilizing the token board, and being in close proximity to her." (*Id*.)  Gallimore again assured Jeffers that she was using the best of her abilities. (*Id*.)  On February 22, when Gallimore attempted to use the strategies given by Jeffers, the classroom teacher stated, "you're not supposed to give them choices." (*Id*.)

On March 20, 2025, Gallimore received an email from Jeffers and Buthelezi stating concerns about her frequent bathroom breaks, phone usage, and "building rapport." (*Id*.)  She was informed that she would be removed if there wasn't any improvement. (*Id*.)  Gallimore responded with her own "concerns about the consistent [*sic*, possibly "constant"] emails and attempted to communicate with [Jeffers] about the teacher[']s behavior in the classroom." (*Id*.)  Copying HR, she again assured her superiors that she was doing the best she could "with fixing the prior concerns on top of the additional ones shared" and that she was using her phone for work tasks. (*Id*. at 11.)  Nonetheless, Jeffers and Buthelezi removed her "from the case" in West Chester on March 21, 2025. (*Id*.)  She responded by putting "in my two weeks to be part time, as [she] was due to start another job in April" with a company called Laurel Life. (*Id*.)  While Gallimore states she was "removed from the case" in West Chester, it is unclear from her additional statement whether she was fired from Siza or she gave them two weeks' notice before resigning to take the other job at Laurel Life.

After she was fired from the job with Laurel Life, Gallimore returned back to work part time with Siza in an extended school year ("ESY") program from July 1 to 27, 2025. (*Id*.)  On July 10, the teacher in the classroom where Gallimore was assigned "began using intimidation

3

when [Gallimore] asked for scheduling information." (*Id*.)  Around July 15, "[t]here was another teacher who said nothing as she pushed past [Gallimore] and stepped on [her] foot while [she] was working." (*Id*.)  At this time, her "sickness became worse" and she wore a heart monitor while working, which she communicated to Siza. (*Id*.)

Around August 8, 2025, after the ESY program had ended, Gallimore requested additional work hours but Buthelezi said she was still receiving complaints about Gallimore from staff at the ESY program and was hesitant to give her more hours. (*Id*.)  On August 21, she reported Siza to the EEOC. (*Id*.)  On August 28, she emailed HR and requested Family Medical Leave Act time off. (*Id*.)  On November 20, 2025, the EEOC had reached out to her about her allegations against Siza and the next day Gallimore received an EEOC document stating that Siza had no knowledge of her reports to the EEOC. (*Id*.)  While on leave in December, Siza's HR department reached out to talk with her about the EEOC report, but she declined to comment. (*Id*.)

After using her full FMLA leave time, Gallimore resigned from Siza on January 5, 2026. (*Id*.)  She believes that Siza "participated in the harassment and discrimination against me for my race, African-American, and then retaliated against [her] after reporting it to the EEOC.  The actions resulted in a hostile work environment making it hard for [her] to maintain employment." (*Id*. at 11-12.)  She seeks money damages. (*Id*. at 12.)

## II.    STANDARD OF REVIEW

The Court grants Gallimore leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see*

*Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the Complaint as true, draw all reasonable inferences in the Gallimore's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

The Court construes *pro se* allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

III.   **DISCUSSION**

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability. *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623; 42 U.S.C. § 12112). Gallimore's Complaint fails to allege plausible discharge, retaliation, and hostile work environment claims under Title VII.

### A.     Termination

To state a claim for employment discrimination under Title VII, a plaintiff must allege sufficient facts to raise a reasonable expectation that her membership in a protected class was "either a motivating or determinative factor" in her employer's adverse employment action. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). Gallimore asserts she is African American. She does not, however, allege plausibly that she was terminated from her employment. Notably, in the form portion of her Complaint Gallimore asserts that she had been "removed" her from her position. (Compl. at 7.) But in the typewritten portion she states that she left Siza the first time to take a different job, adding that she put in her "two weeks to be part time, as [she] was due to start another job in April." (Compl. at 11.) The second time she left Siza, she states specifically that she resigned after the ESY term had ended and after using her full FMLA leave time. (*Id.*) Even if her allegations could be read to assert she was terminated, Gallimore does not allege sufficient facts to raise a reasonable expectation that her race was either a motivating or determinative factor in her termination. Other than her conclusory assertion that she was discriminated against based on her race, Gallimore does not mention race at all in her factual allegations. In short, she alleges nothing to raise an inference that she was terminated because of her race.

### B.     Retaliation

The retaliation claim also fails.  As the Court instructed Gallimore previously, for a retaliation claim under Title VII to be plausible, a plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action."  *Gallimore I*, 2026 WL 309489, at *3 n.3 (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).  Title VII protects "those who oppose discrimination made unlawful by Title VII."  *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006).  Not every complaint about employment entitles its author to protection from retaliation under Title VII.  *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (noting that Title VII does not "set forth a general civility code for the American workplace" (internal quotation marks omitted)).  "Rather, only complaints about discrimination prohibited by Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2— constitute 'protected activity.'"  *Davis v. City of Newark*, 417 F. App'x 201, 202-03 (3d Cir. 2011) (*per curiam*) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995)). "Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII."  *Id.* at 203 (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)).  "General complaints of unfair treatment will not suffice."  *Id.* (citing *Barber*, 68 F.3d at 702).

Gallimore's retaliation claim, based on her alleged termination and Siza's refusal to give her more work hours, is also not plausible.  She asserts that on August 21, 2025 she reported Siza to the EEOC (Compl. at 11), satisfying the first element of the retaliation claim.  While she

7

asserts that Siza then reached out to her for information about her EEOC report, Gallimore does not explain how this constituted retaliatory conduct. She also asserts that, after using her full FMLA leave time that Siza granted, she resigned from Siza on January 5, 2026. (*Id.*)

As noted, while stating in the typewritten section of the Complaint that she resigned the first time in March 2025 to take another job, and then resigned again at the conclusion of her FMLA leave on January 5, 2026 (*id.*), Gallimore also alleges inconsistently in the form portion of the Complaint that Siza "removed" her from her position when she allegedly attempted to talk to supervisors about discrimination and retaliated against her by limiting her work hours. (*Id.* at 7.) Even if she was terminated, the allegation about retaliation is at best undeveloped and unsupported by any other facts that Gallimore had attempted to raise discrimination with a supervisor, and thus fails to allege protected conduct that was causally linked to a termination. Gallimore's other retaliation allegation, that around August 8, 2025, her request for additional work hours was declined, is also not causally linked to any protected conduct since this occurred before Gallimore made her report to the EEOC on August 21, 2025, and she fails to allege facts about any prior attempt to raise discrimination with a supervisor. The retaliation claim will, therefore, be dismissed.

### C.    Hostile Work Environment

To plead a hostile work environment claim, a plaintiff must allege: (1) she suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Starnes v. Butler Cnty. Ct. of Common Pleas*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotations, and citations omitted); *Felder v. Penn Mfg. Indus., Inc.*,

303 F.R.D. 241, 243 (E.D. Pa. 2014). "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (cleaned up)); *Burlington N. & Santa Fe Ry.*, 548 U.S. 53, 68 (2006) (noting that Title VII does not "set forth a general civility code for the American workplace" (internal quotation marks omitted)). As the Court informed Gallimore, "[t]he question of whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Gallimore I*, 2026 WL 510725, at *3 (quoting *Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *3 (3d Cir. Nov. 13, 2023) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Gallimore's hostile work environment claim is not plausible. Stated simply, she fails to allege anything to satisfy the elements of the claim. Gallimore mentions numerous instances of negative feedback from Siza supervisors about her work performance and unspecified "intimidation" by the classroom teachers with whom she interacted, including one incident where someone stepped on her foot. Nothing about these alleged incidents relate to severe intentional race-based discrimination to support a Title VII hostile work environment claim. This claim too will be dismissed.

## IV.   CONCLUSION

For these reasons, Gallimore's Complaint will be dismissed. The coworkers will be dismissed with prejudice. Although the Court has previously provided Gallimore with the legal elements of Title VII discrimination claims, and described the kinds of facts she had to allege to state plausible violations of Title VII, the Court will grant her leave to file an amended complaint

9

if she is able to allege facts to cure the defects in her claims against Siza. Gallimore's request for appointment of counsel will be denied as premature. *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (holding that, in determining whether to appoint *pro bono* counsel, the Court must first consider, as a threshold matter, whether the plaintiff's claim has "some merit in fact and law"). An order containing additional information on amendment will be entered separately.

**BY THE COURT:**

*/S/ Kai N. Scott*
**KAI N. SCOTT, J.**